### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHARON KASPER, Individually and On Behalf of All Others Similarly Situated, | )<br>)<br>) |
| Plaintiff, | ) Case No. _____ |
| v. | )<br>) JURY TRIAL DEMANDED<br>) |
| BOJANGLES', INC., WILLIAM A. KUSSELL, STEVEN J. COLLINS, JOHN E. CURRIE, CHRISTOPHER J. DOUBRAVA, TOMMY L. HADDOCK, ROBERT F. HULL, JR., STARLETTER JOHNSON, JAMES R. KIBLER, MARK A. ROWAN, and STEVEN M. TADLER, | ) CLASS ACTION<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on November 6, 2018 (the "Proposed Transaction"), pursuant to which Bojangles', Inc. ("Bojangles'" or the "Company") will be acquired by affiliates of Durational Capital Management LP and The Jordan Company, L.P.

2. On November 6, 2018, Bojangles' Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Walker Parent, Inc. and Walker Merger Sub, Inc. Pursuant to the terms of the Merger Agreement, Bojangles' stockholders will receive $16.10 cash per share of Bojangles'.

3. On December 10, 2018, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement, which scheduled a stockholder vote on the Proposed Transaction for January 10, 2019, omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Bojangles' common stock.

9. Defendant Bojangles' is a Delaware corporation and maintains its principal executive offices at 9432 Southern Pine Boulevard, Charlotte, North Carolina 28273. Bojangles'

common stock is traded on the NasdaqGS under the ticker symbol "BOJA."

10. Defendant William A. Kussell is Chairman of the Board of the Company.

11. Defendant Steven J. Collins is a director of the Company.

12. Defendant John E. Currie is a director of the Company.

13. Defendant Christopher J. Doubrava is a director of the Company.

14. Defendant Tommy L. Haddock is a director of the Company.

15. Defendant Robert F. Hull, Jr. is a director of the Company.

16. Defendant Starlette Johnson is a director of the Company.

17. Defendant James R. Kibler ("Kibler") is a director of the Company.

18. Defendant Mark A. Rowan is a director of the Company.

19. Defendant Steven M. Tadler is a director of the Company.

20. The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action on behalf of herself and the other public stockholders of Bojangles' (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22. This action is properly maintainable as a class action.

23. The Class is so numerous that joinder of all members is impracticable. As of November 2, 2018, there were approximately 37,548,674 shares of Bojangles' common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24. Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company*

28. Bojangles' is a highly differentiated and growing restaurant operator and franchisor dedicated to serving customers high-quality food made from the Company's Southern recipes.

29. Founded in 1977, Bojangles' serves menu items such as biscuit breakfast sandwiches, hand-breaded bone-in chicken, sides, and Legendary Iced Tea®.

30. As of July 1, 2018, Bojangles' had 766 system-wide restaurants, 325 of which were company-operated and 441 were franchised restaurants, primarily located in the Southeastern United States.

31. On November 8, 2018, the Company issued a press release wherein it reported its financial results for the thirteen-week third fiscal quarter ended September 30, 2018.

32. The Company reported that system-wide comparable restaurant sales increased 0.4%, while company-operated comparable restaurant sales increased 0.1% and franchised comparable restaurant sales increased 0.7%. Total revenues increased to $138.7 million from $136.0 million in the prior year fiscal quarter. Five system-wide restaurants were opened, consisting of one company-operated restaurant and four franchised restaurants. Adjusted net income increased to $8.1 million as compared to $6.5 million in the prior year fiscal quarter. Adjusted diluted net income per share increased to $0.21 as compared to $0.17 in the prior year fiscal quarter. Additionally, adjusted EBITDA increased to $16.5 million as compared to $16.1 million in the prior year fiscal quarter.

33. With respect to the financial results, Individual Defendant Kibler commented:

> We are pleased the Bojangles'® system returned to positive comparable restaurant sales during the third fiscal quarter despite the negative impact associated with Hurricane Florence in September[.]
>
> We believe our back to basics strategy of operating 'well-run restaurants' is elevating customer perceptions of Bojangles'. We are enhancing customers' total brand experience through staffing and training initiatives, improving speed of service at the drive-thru, promoting high-quality signature menu items with value messaging, and building out our technological capabilities to support the use of our new mobile app and delivery test[.]

*The Proposed Transaction*

34. On November 6, 2018, Bojangles' Board caused the Company to enter into the Merger Agreement.

35. Pursuant to the terms of the Merger Agreement, Bojangles' stockholders will receive $16.10 cash per share of Bojangles'.

36. According to the press release announcing the Proposed Transaction:

Bojangles', Inc. (Bojangles', the "Company") (NASDAQ: BOJA) today announced that it has entered into a definitive agreement to be acquired by Durational Capital Management LP and The Jordan Company, L.P. Under the terms of the agreement, Durational Capital Management LP and The Jordan Company, L.P. will acquire the Company in an all cash transaction. Bojangles' stockholders will receive $16.10 per share, representing a 39% premium to the closing share price of February 12, 2018, a day prior to initial speculation regarding a potential transaction involving Bojangles' and a premium of approximately 30% to the 90-day volume weighted average price ending on February 12, 2018. The offer represents a 15% premium to the closing share price of September 27, 2018, a day prior to a published report that Bojangles' is exploring strategic alternatives.

Transaction Details
The acquisition, which has been unanimously approved by Bojangles' Board of Directors, is subject to stockholder approval and other customary closing conditions. Concurrently with the execution of the acquisition agreement, Bojangles' majority stockholder executed a customary voting agreement whereby it agreed (among other things) to vote its shares in favor of the acquisition. The transaction is expected to be completed in the first quarter of fiscal year 2019. Upon closing of the transaction, Bojangles' will continue to be operated as an independent, privately-held company and will remain based in Charlotte, N.C. . . .

*The Proxy Statement Omits Material Information*

37. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for January 10, 2019.

38. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction.

39. The Proxy Statement omits material information regarding the Company's financial projections and the analyses performed by the Company's financial advisors in

connection with the Proposed Transaction, Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BofA") and Houlihan Lokey Capital, Inc. ("Houlihan").

40. With respect to the Company's financial projections, the Proxy Statement fails to disclose: (i) all line items used to calculate free cash flow; (ii) all line items used to calculate Adjusted EBITDA; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

41. With respect to BofA's Selected Precedent Transactions Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for the transactions observed by BofA in the analysis.

42. With respect to BofA's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the unlevered, after-tax free cash flows for the Company; (ii) the terminal values for the Company; (iii) the inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0% and the perpetuity growth rates ranging from 1.0% to 2.0%; and (iv) the Company's net debt.

43. With respect to Houlihan's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) Houlihan's basis for applying a range of terminal value multiples of 8.0x to 9.0x; and (ii) the inputs and assumptions underlying the discount rates ranging from 8.5% to 9.5%.

44. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

45. The Proxy Statement also fails to disclose whether the Company entered into any confidentiality agreements that contained standstill and/or "don't ask, don't waive" provisions that are or were preventing the counterparties from submitting superior offers to acquire the Company.

46. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

47. The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Recommendation of the Board and Reasons for the Merger; (iii) Opinions of Financial Advisors; and (iv) Projected Financial Information.

48. The omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Bojangles'

49. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

50. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Bojangles' is liable as the issuer of these statements.

51. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

8

52. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

53. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

54. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

55. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

56. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## **COUNT II**

### **Claim for Violation of Section 20(a) of the 1934 Act Against the Individual Defendants**

57. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

58. The Individual Defendants acted as controlling persons of Bojangles' within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Bojangles' and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

59. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

60. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

61. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

62. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.   In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.   Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.   Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.   Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.   Granting such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  December 12, 2018   **RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Seth D. Rigrodsky (#3147)
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*